UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| C. CROFT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:20-CV-00436-LEW |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OF DECISION AND ORDER

Plaintiff filed suit pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of the Social Security Administration Commissioner's final administrative decision finding Plaintiff not disabled and denying her claim for benefits under Title XVI of the Social Security Act. Based on a review of the administratrive record and after carefully considering the written and oral arguments of counsel, Plaintiff's Statement of Errors is overruled and the final administrative decision is affirmed.

### BACKGROUND

Plaintiff is a young woman, currently 21 years of age, who has never worked except for odd jobs performed for her father's construction firm that produced no meaningful earning history. Plaintiff's claim of disability involves an amended onset date coinciding with her 18th birthday because her family income was too high for her to succeed with a claim for child benefits during her minority.

Based on the record available as of the administrative hearing, the administrative law judge ("ALJ") found that Plaintiff has multiple "severe" impairments, meaning

impairments that significantly limit Plaintiff's ability to perform basic work activities. 20 C.F.R. § 416.920(c). The ALJ identified as severe Plaintiff's recurrent arrhythmias with a history of postural orthostatic tachycardia syndrome, anxiety disorder, depressive disorder, and personality disorder. In her review of Plaintiff's alleged impairments, the ALJ identified as non-severe a few other impairments, including Plaintiff's "use [of] marijuana on a daily basis at all times relevant to this decision," R. 28, even though Plaintiff at times used marijuana heavily enough to induce cyclical vomiting syndrome, which on seven occasions in three years produced such a level of dehydration that Plaintiff visited the emergency room for intravenous fluids, R. 29. In addition, the ALJ found that Plaintiff's "suspected small fiber neuropathy," though reported at Exhibits 7F, 20F, 23F, 26F, and 30F, was indeterminate given certain findings in the treatment records. R. 27-28. Finally—for present purposes—the ALJ found not medically determinable Plaintiff's alleged learning disabilities. R. 30.

Ultimately, the ALJ determined that Plaintiff is not disabled based on a physical residual functional capacity finding allowing for a "full range of work at all exertional levels" subject to certain environmental/hazard restrictions designed to address a concern for light-headedness, and a mental RFC finding allowing for "simple tasks over two-hour blocks within a normal work schedule," excluding work with the public. R. 33. Based on the testimony of a vocational expert, the ALJ determined that Plaintiff is capable of substantial gainful activity, including in such representative occupations as addresser, routing clerk, and kitchen helper. R. 39-40.

Plaintiff argues the ALJ erred at step two of the sequential evaluation process when she found that Plaintiff's small fiber neuropathy is not a severe impairment. Plaintiff also argues that the Appeals Council committed egregious error when it upheld the ALJ's finding that Plaintiff's learning disabilities are not medically determinable, given new evidence (a neuropsychological evaluation report) first presented to the Appeals Council.

## DISCUSSION

Title XVI of the Social Security Act provides supplemental security income benefits "to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019). As Plaintiff is neither aged nor blind, she must demonstrate that she is disabled to secure social security benefits. To be disabled—or "under a disability"—for purposes of the social security program, Plaintiff's physical and/or mental impairments must be of at least twelve months' duration, 42 U.S.C. § 423(d)(1)(A), and be "of such severity that [s]he . . . cannot, considering [her] age, education, and work experience, engage in any . . . substantial gainful work which exists in the national economy," *id.* § 423(d)(2)(A).

When considering the severity of impairments, the Commissioner "shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). However, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." *Id.* § 423(d)(2)(C).

The Commissioner utilizes a five-step process to evaluate disability claims. *Evaluation of disability in adults, in general,* 20 C.F.R. § 416.920. At step one, the Commissioner determines whether the claimant has been engaged in substantial gainful activity within the period of alleged disability. *Id.* § 416.920(a)(4)(i). If not, then the Commissioner proceeds to step two. At step two, the Commissioner identifies those impairments that are born out in the medical record that qualify as "severe" for vocational purposes. *Id.* § 416.920(a)(4)(ii). If severe impairments are found, then at step three the Commissioner determines whether those impairments are so severe as to automatically render the claimant disabled for vocational purposes, consulting a supplemental regulation known as the listings. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairments are not at listing-level severity, the evaluation process continues. Preliminary to further evaluation at steps four and five, the Commissioner determines what residual functional capacity ("RFC") the claimant has for physical and mental work activity. Then, at step four, the Commissioner determines whether the claimant's RFC permits her to perform any past relevant work and, if not, the Commissioner proceeds to step five to determine whether there is any other work in the national economy that the claimant could perform. *Id.* § 416.920(a)(4)(iv), (v).

Here, the Commissioner made two findings at step two that the Plaintiff claims were erroneous. First, the Commissioner—through the administrative law judge ("ALJ")—found that Plaintiff's medical records did not support a finding that small fiber neuropathy is experienced by Plaintiff as a severe impairment for vocational purposes. Second, the Commissioner—this time through the Appeals Council—found that medical evidence

4

introduced after the ALJ issued her decision did not undermine the ALJ's finding that Plaintiff did not appear to have a vocationally relevant learning disability.

### A. Small Fiber Neuropathy

A severe impairment for vocational purposes is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The burden to demonstrate a severe impairment at step two is light, "designed to do no more than screen out groundless claims." *McDonald v. Sec'y of Health and Human Services*, 795 F.2d 1118, 1124 (1st Cir. 1986). Still, an impairment of record is fairly regarded as non-severe if it is not substantiated by the available medical evidence or if "a finding of non-disability would necessarily result" notwithstanding any other vocationally disadvantageous attributes of the claimant's vocational profile (i.e., her age, education level, prior work experience, etc.). *Id.* In other words, an impairment supported by medical evidence is non-severe when the "evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985).

When it comes to weighing a disability claimant's impairments against applicable disability standards, "[t]he Secretary's findings of fact are conclusive if supported by substantial evidence." *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the Commissioner must support findings with substantial evidence on the record, the burden of proof rests with the claimant at all stages of the Commissioner's sequential evaluation process except for the fifth (and final) step. *Goodermote v. Sec'y of Health & Human Services*, 690 F.2d 5, 7 (1st Cir. 1982); *Devlin v. Sec'y of Health & Human Services*, 981 F.2d 1245 (1st Cir. 1992) (unpub. table op.). That means that here, where the controversy involves step two considerations and, potentially, the reliability of the ALJ's RFC findings, Plaintiff has the burden of proving not only the existence of underappreciated, vocationally severe impairments, but also that any alleged error at step two undermines the reliability of the ALJ's RFC finding and, by extension, the ALJ's ultimate "not disabled" finding at step four or step five. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012).

The ALJ found that although Plaintiff had reported "suspected small fiber neuropathy . . . no specific etiology had been identified." R. 27. The ALJ noted that Plaintiff "remained neurologically intact on examinations with normal motor strength, tone, reflexes, and sensation, and no atrophy" despite reporting "pain, numbness, and tingling in the upper extremities on a couple of occasions." *Id.* The ALJ also found that "electrodiagnostic/nerve conduction studies on September 16, 2019 were essentially negative for cervical radiculopathy, plexopathy, other mono/polyneuropathies, and myopathic processes in the bilateral upper extremities" despite an earlier "skin biopsy performed on July 19, 2016 [that] was reported to have shown decreased innervation of the epidermis." R. 27-28. Based on these findings, the ALJ found insufficient evidence of small fiber neuropathy to support a determination of severe disability.

Plaintiff argues that the ALJ misconceived the nature of the impairment and quotes online medical resources indicating that normal neurological findings do not rule out the possibility of small fiber neuropathy. Statement of Errors 11-12. Plaintiff goes on to suggest that the impairment is vocationally relevant because the vocational expert said that substantial gainful work is unavailable to an individual who is off-task more than ten percent of the workday or has more than one unscheduled absence per month. *Id.* 12. Yet, Plaintiff does not provide a citation to the medical record to direct me to any medical evidence of a definite diagnosis or to medical opinion evidence suggesting that the symptoms associated with the alleged neuropathy are vocationally meaningful. As the burden rests with Plaintiff, *see Socobasin*, 882 F. Supp. 2d at 142, the failure to guide me through the evidence precludes relief on this issue even if the ALJ's lay assessment was misguided.

### B. Learning Disabilities or Cognitive Limitations

In her decision, the ALJ considered Plaintiff's report of subjective symptoms resulting from an alleged learning disability, including poor reading skills. Insofar as Plaintiff has a general equivalency degree there is cause for a reasonable mind to conclude that she is capable of reading for purposes of many occupations, including those identified in the ALJ's step five finding. R. 30. The ALJ also observed that while Plaintiff has a history of receiving some special education services in school, "the evidence of record fail[ed] to demonstrate that [there] is a medically determinable impairment." *Id.* The ALJ noted, in particular, that the record produced by Plaintiff was devoid of any "[i]ntelligence or neuropsychological testing." *Id.*

On January 30, 2020, eight days after the ALJ issued her decision, Plaintiff attended the first of two evaluation sessions with Anthony Podraza, MS, PhD, ABPP.[1] Dr. Podraza's assistant administered a battery of tests and Dr. Podraza issued his Neuropsychological Evaluation Report in time for the report to be presented to the Appeals Council. In its Notice of Appeals Council Action, the Appeals Council acknowledged the Podraza Report, but denied review based on its finding that the "evidence does not show a reasonable probability that it would change the outcome of the decision." R. 2.

### 1. *The ALJ did not err*

Given the state of the record available to her, the ALJ appropriately concluded that Plaintiff had not carried the burden of persuasion at step two to establish the existence of a vocationally severe learning disability. Indeed, even in the context of judicial review Plaintiff fails to demonstrate that persuasive evidence of a potentially outcome-determinative learning disability was available in the administrative record reviewed by the ALJ. I, therefore, turn to Plaintiff's new evidence, first considered by the Appeals Council.

### 2. *The Appeals Council did not err*

The refusal of the Appeals Council ("AC") to modify or remand the ALJ's decision based on Plaintiff's presentation of evidence acquired after the administrative hearing can

---

[1] In a document entitled Neurology Consultation dated April 2, 2019, Tarek Wazzan M.D. reported a visit with Plaintiff at which she requested a referral for neuropsychological testing. R. 933 (ECF No. 19-17). Dr. Wazzan's recommendations indicate that a "[r]eferral to neuropsych testing was made." *Id.* Although Plaintiff anticipated that she would undergo neuropsychological testing, the Commissioner observes that Plaintiff never apprised the ALJ of any forthcoming evaluation prior to, or at, the administrative hearing. Def.'s Opp'n 6.

be overturned on judicial review where the AC has provided "an egregiously mistaken ground" for its refusal. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). Accordingly, the question is whether the AC was egregiously mistaken when it determined that the Podraza Report did not raise a reasonable probability that the outcome would change following a remand for further proceedings.

The AC implicitly acknowledged in its Notice that the Podraza Report was material and required consideration in the course of deciding whether to grant review but found the evidence "does not show a reasonable probability that it would change the outcome of the decision." R. 2. The AC's assessment as to the probability of a different outcome was not unreasonable, let alone egregiously mistaken. In his report, Dr. Podraza observed that "[p]reliminary diagnoses include: Neurocognitive Disorder due to [inter alia] cannabis use" and that the referral for neurocognitive evaluation was meant to determine Plaintiff's "current neurobehavioral status." R. 15. To the extent that Plaintiff's neurobehavioral status is the product of her extensive marijuana dependence—as Dr. Prodraza appears to have suggested—a finding of disability premised on the Podraza Report would be precluded by law. 42 U.S.C. § 423(d)(2)(C). Notably, Dr. Prodraza does not rule out the possibility that Plaintiff's "cannabis use disorder," R. 17, had an impact on Plaintiff's performance during neurocognitive testing. On that score he states that the "findings are likely to be multifactorial in nature and due in part [to, inter alia,] cannabis dependence." R. 18. Thus, while the Podraza Report contains evidence that would have informed Plaintiff's claim for disability benefits following a remand, I conclude on this record that

9

the AC was not egregiously mistaken in thinking that a change in outcome was not reasonably probable.

## CONCLUSION

For the foregoing reasons, Plaintiff's Statement of Errors is OVERRULED and the Commissioner's final administrative decision is AFFIRMED.

**SO ORDERED.**

Dated this 25th day of April, 2022.

                                            /s/ Lance E. Walker
                                        UNITED STATES DISTRICT JUDGE